**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **SONICSOLUTIONS ALGAE CONTROL, LLC,** | * | |
| **SONIC SOLUTIONS, LLC, and** | * | |
| **ALGAECONTROL.US LLC,** | * | |
| | * | |
| **Plaintiffs** | * | |
| | * | |
| **VS.** | * | **Civil Action No.** |
| | * | **3:21-cv-30068-KAR** |
| | * | |
| **DIVERSIFIED POWER INTERNATIONAL, LLC,** | * | |
| **and ANTONIO TRIGIANI,** | * | |
| | * | |
| **Defendants** | * | |

# RESPONSE IN OPPOSITION TO RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants, Diversified Power International, LLC ("DPI") and Antonio Trigiani ("Trigiani") (DPI and Trigiani sometimes collectively hereafter the "Defendants"), submit the following response in opposition to Plaintiffs renewed motion for temporary restraining order.  In support of this response, Defendants rely on the Declaration of Antonio Trigiani previously filed in this case [Doc. 26-1] (the "Trigiani Declaration") [The Trigiani Declaration will be referred to herein as "Trig. Dec., ¶ _____].  In addition, Defendants rely on the Supplemental Declaration of Antonio Trigiani filed herewith which will be referred to herein as Trig. Supp. Dec., ¶ ____.

## INTRODUCTION

Plaintiffs filed this action on June 9, 2021. [Doc. 1]. Plaintiffs[1] seek injunctive relief and monetary damages under various theories. On June 18, 2021, Plaintiffs filed a motion for temporary restraining order and/or preliminary injunction. [Doc. 6]. By electronic order dated June 23, 2021, the Court denied the Plaintiffs' motion for a temporary restraining order but reserved ruling on the Plaintiffs' motion for preliminary injunction. On July 2, 2021, Defendants filed alternate response in opposition to motion for temporary restraining order and/or preliminary injunction. [Doc. 29][2]. On July 7, 2021, Plaintiffs filed renewed motion for temporary restraining order (to be issued without further notice to defendants) [Doc. 33]. The Court, by Electronic Order filed July 27, 2021, treated the Plaintiff renewed motion for a temporary restraining order as a second motion for a preliminary injunction.

Defendants now submit this response to Plaintiffs' second motion for a preliminary injunction. For the reasons set forth herein and those stated in Defendants' prior alternate response to Plaintiffs' first motion for temporary injunction, both motions should be denied.

---

[1] Plaintiff Sonic Solutions Algae Control, LLC will be referred to herein as "SSAC". Plaintiff Sonic Solutions, LLC will be referred to herein as "Sonic Solutions." Plaintiff Algaecontrol.US LLC will be referred to here as "ACUS."

[2] Defendants adopt and incorporate herein by reference the arguments advanced by them in their previous response in opposition to Plaintiffs' first motion for a preliminary injunction.

## **TEMPORARY INJUNCTION STANDARD**

A temporary injunction may issue if the movant establishes four factors: (1) the movants probability of success on the merits; (2) the likelihood of irreparable harm absent preliminary injunctive relief; (3) a comparison between the harm to the movant if no injunction issues and harm to the objectors if one does not issue; and (4) how the granting or denial of an injunction will interact with the public interest. New Comm Wireless Servs., Inc. v. Sprint Com, Inc., 287 F.3d 1, 8-9 (1st Cir. 2002). In the final analysis, the first factor likelihood of success "is the main bearing wall of the four-factor framework." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1966). In addition, irreparable harm is "an essential prerequisite" for receiving injunctive relief. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13 (1st Cir. 2000). The burden of demonstrating the denial of interim relief is likely to cause irreparable harm rents squarely on the movant. Ross-Simmons, 102 F.3d at 18.  "A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right."  Peoples Fed. Sav. Bank c. People's United Banks, 672 F.3d 1, 8-9 (1st Cir. 2012).

### 1.   **Plaintiffs cannot meet their burden of establishing the likelihood of success on the merits on any of their causes of action set forth in their complaint.**

Plaintiffs assert eight separate causes of action: tortious interference with business relations; tortious interference with contractual relations; intentional interference with contractual rights; violation of M.G.L.C. 93A, § 11; breach of contract; breach of DPI noncompete; injunctive relief pursuant to G.L.C. 266 § 91; and defamation.  Each cause

of action and the present lack of an evidentiary basis to warrant injunctive relief will be addressed in turn.

      **a.**      <u>**Tortious Interference with business relations and tortious interference with contractual relations.**</u>

Under Massachusetts law, these claims are similar.  To establish a claim for tortious interference with business relations, the plaintiff must plead and prove the following elements: (1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendant's knowledge of that contract or business relationship; (3) the defendant's intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages. <u>Swansea Div. Corp. v. City of Taunton</u>, 423 Mass. 390, 668 N.E. 2d 333, 338 (1996).  A claim of interference with an advantageous business relationship requires that one, without privilege to do so, intentionally induces or causes a third person not to enter into or continue a business relationship with another.  <u>Riseman v. Orion Research, Inc</u>., 394 Mass. 311, 475 N.E.2d 398, 400 (1985).  In order to succeed on an interference with contractual relations claim, a plaintiff must show (1) he had a contract with a third party; (2) the defendant knowingly interfered with the contract by inhibiting the plaintiff or the third party's performance thereof; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff incurred damages. <u>O'Donnell v. Boggs</u>, 611 F.3d 50, 54 (1st Cir. 2010) (citing <u>Harrison v. NetCentric Corp.,</u> 433 Mass. 465, 744 N.E. 2d 622, 632 (2001)).

Mr. Trigiani states in his declaration that he has no knowledge of any contracts or agreements that may exist between SSAC and its customers or its dealers. [Trig. Dec. ¶ 44; Trig. Supp. Dec., ¶ 4]. The only third party contract identified in Plaintiffs' filings is a Dealer Sales Agreement dated February 4, 2020 between SSAC and Les Triatements Bis-Bac, Inc., a Canadian company. [Doc 1-6]. DPI was unaware of this agreement until Plaintiffs' suit was filed. [Trig. Supp. Dec., ¶ 4]. Thus, there is a sharp dispute as to a common element of the claims of tortious interference with business relations and interference with contractual relations, that is, DPI's knowledge of the contract or the business relationship itself, making a determination whether the requested injunctive relief is improper without some form of evidentiary hearing. See Rohm & Haas Ele. Materials, LLC v. Elec. Circuits Supplies, Inc., 759 F.Supp.2d 110, 117 (D. Mass. 2010) (courts should not rely on affidavits or well-pleaded allegations to support a motion for a preliminary injunction if the parties' competing version of the factual events are in sharp dispute); Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir. 1995) (when the parties' competing version of the pertinent factual events are in sharp dispute, such that the proprietary of injunction relief hinges on determination of creditability, the inappropriateness of proceeding on affidavits alone attains its maximum).

DPI also claims that Plaintiffs' proof for purposes of prevailing on the merits of such claims is also lacking on the third element of both causes of action, improper motive. "The improper motive or malevolence required is actual malice, a spiteful malignant purpose correlated to a legitimate corporate interest." King v. Driscoll, 418 Mass. 576, 587, 638 N.E.2d 488 (1994). Where a party's motivation was its own financial benefit, it was not acting with an improper motive. Am. Private Line Sers., Inc. v. E. Microwave, Inc., 980

F.2d 33, 37 (1st Cir. 1992).  Mr. Trigiani's Declaration makes it clear that DPI declined to accept SSAC's purchase orders because of the apparent combination of SSAC and Algaesonix, LLC and DPI accepting an Algaesonix purchase order under false pretenses. [Trig. Dec. ¶ 35, 37].   Mr. Trigiani had no knowledge of which entity was in control.  [Trig. Supp. Dec., ¶ 3].   Mr. Trigiani also states in his declaration that he was informed that SSAC and Algaesonix were one company and four of DPI's employees resigned and went to Algaesonix in contravention of their respective employment agreements.   [Id]. DPI made this decision not to sell HBS products to SSAC in protection of its own business interests. [Trig. Supp. Dec., ¶ 3].    There is no actionable improper motive when the defendant is simply acting in pursuit of his own business purpose.  Sherman v. Clear Channell Outdoor, Inc., 889 F. Supp. 168, 177-78 (D. Mass. 2012).  Further, there is no evidence submitted by Plaintiffs that DPI had a contractual obligation to supply SSAC so that SSAC could fulfill potential orders to third parties.  Given these disputed facts before the Court and even assuming for purposes of argument that SSAC is entitled to injunctive relief on a tortious interference with business relations claim or an interference with contractual rights claim, which Defendants deny, (see infra), SSAC or Plaintiffs have not met their burden of showing a factual basis sufficient for the Court to conclude that there is a substantial likelihood they will prevail on the merits of these two claims.    DPI, therefore, submits that injunctive relief premised on either of these claims would be inconsistent with applicable law requiring a moving plaintiff to first establish a substantial likelihood to prevail on the merits of its claims.

### b. __Violation of M.G.L.C. 93A § 11__.

Massachusetts General Law c. 93A, § 2(a) makes it unlawful to engage in "[u]nfair methods of competition and unfair deceptive acts or practices in the conduct of trade or commerce."   Section 11 creates a private right of action for a business and which states in part:

> Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two. . . may. . . bring an action in the superior court. . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.

Section 11 mandates that the unfair or deceptive act or practice occur "primarily or substantially in Massachusetts."   Newly Wed Foods, Inc. v. Superior Nut Co., Inc., 26 Mass. L. Rptr. 602, at *3 (Mass. Sup. Ct. Feb. 18, 2010).   Plaintiffs' Complaint and other filings do not state or contain any reference to any alleged deceptive acts and practices that were committed by Defendants in Massachusetts or even which occurred in Massachusetts.   Moreover, Mr. Trigiani's Declaration clearly states that all DPI's operations and communications relative to its HBS products originated in Tennessee. [Trig. Dec., ¶ 5, 6, 16, 18, 19, 20, 24, 25, 26, 27, 28, 29, 35, 37, 44, 45].   Mr. Trigiani's last visit to Massachusetts was in 2012.  [Trig. Dec., ¶ 17].  DPI submits these facts which are undisputed in this record satisfies its burden that any alleged unfair or deceptive act did not primarily or substantially occur in Massachusetts.  Newly Wed Foods, Inc., supra.

For this independent reason, Plaintiffs cannot establish a substantial likelihood that they will prevail on the merits of their unfair or deceptive act or practice claims.

Additionally, the evaluation of whether alleged conduct is "unfair" or "deceptive" is a fact-intensive inquiry, which considers "all the circumstances" of a business transaction. See Duclersaint v. Federal Nat'l Ass'n, 427 Mass. 809, 814, 696 N.E.2d 536 (1998). Further, breaches of contract, without more, do not violate Chapter 93A.  Pepsi-Cola Metro Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985).  Plaintiff's claims for a violation of § 11 are conclusory in nature.  [Doc. 1, p. 18].  But, even assuming for purposes of argument, Plaintiffs or SSAC have stated a claim in their complaint for a § 11 violation, they have not provided a factual basis sufficient to justify a preliminary injunction.

### c.  Breach of Contract.

The elements of a breach of contract claims under Massachusetts law are (1) an agreement between a plaintiff and defendant supported by adequate consideration; (2) the plaintiff has been ready, willing and able to perform; (3) the defendant's breach has prevented it from performing; and (4) the plaintiff has suffered damages.  Singarella v. Boston, 342 Mass. 385, 387 (1961).  The party plaintiff seeking injunctive relief in SSAC. [See Doc. 6 and 33].  SSAC fails to identify any written contract or express agreement between SSAC and DPI.  For this reason alone, SSAC has not met the burden of demonstrating likelihood of success on its breach of contract claim for purpose of a preliminary injunction because there is no contract to be enforced.

8

Instead, Plaintiffs and SSAC rely on the theory of implied contract.  As previously, argued, Plaintiffs cite no authority where a Massachusetts Court has granted a preliminary injunction based on the alleged breach of an implied contract or a contract that requires proof of its existence.  An implied in fact contract may be found to exist from the conduct and relation of the parties, and the party seeking to establish an implied contract must "state with substantial certainty the facts showing the existence of the contract and the legal effect thereof."  Squire v. Mount Ida Coll., 954 F.3d 56, 71 (1st Cir. 2020).  An implied in fact contract claim requires a factually intensive inquiry by the factfinder.  See Primarque Products Co., Inc. v. Williams, etc., 303 F.Supp. 3d 188, 205 (D. Mass. 2018) (question of fact as to whether party provided to contract provided reasonable notice of termination), aff'd 988 F.3d 26 (1st Cir. 2021).  Given the lack of an express agreement between SSAC and DPI and the level of proof necessary for SSAC or the Plaintiffs to establish an implied in fact contract with DPI, SSAC or Plaintiffs have not met their burden of establishing the likelihood of success on the merits on their implied in fact contract claim.

### d.   Breach of DPI Non-Compete.

In their complaint, Plaintiffs define the "DPI Non-Compete" as the May 8, 2012 "Confidentiality, Non-Disclosure [A]ND Non-Compete Agreement" (the "Agreement") which is attached as Exhibit 1 to the Complaint.  Count VI of the Complaint contains the following allegations:

151. The DPI Noncompete is a valid agreement binding on DPI.

I52. DPI materially breached this agreement by using Plaintiffs' confidential customer information to contact and directly solicit these customers.

153. As a result of DPI's breach of this contract, Plaintiffs have been harmed.

154. By the DPI Noncompete's own terms, Plaintiffs are entitled to injunctive relief under these circumstances without placing a bond.

[Doc. 1, p. 19]. DPI and Sonic Solutions are the parties to the Agreement. [Doc. 1-3]. Neither SSAC or ACUS are parties to the Agreement and, thus, neither party has a right to enforce it. Under Massachusetts law to prove an underlying breach of contract claim, SSAC and ACUS must show (1) the existence of a valid binding contract, (2) the defendant breached the terms of the contract, and (3) the Plaintiff has sustained damages from the breach. Brooks v. AIG SunAmerica Life Assurance Company, 480 F.3d 579, 586 (1st Cir. 2007). In both the first and the second motion, the only party seeking injunctive relief is SSAC. Inasmuch as SSAC is not a party to this Agreement, it cannot seek to enforce its provisions by way of any form of injunctive relief. In the first and second motion, ACUS does not seek any injunctive relief. But even assuming for purposes of argument ACUS is seeking to enforce the Agreement by way of injunctive relief, it likewise is not a party to the Agreement and has no standing to enforce it. Brooks, supra. SSAC and ACUS, therefore, cannot show a substantial likelihood to prevail on the merits of their claim for breach of the Agreement so as to be entitled to injunctive relief.

Assuming Sonic Solutions is seeking to assert a claim for "Breach of the Non-Compete" and for purposes of preliminary injunctive relief, the Agreement itself states:

> For purposes of evaluation and determination of their respective interest in proceeding with an arrangement each party agrees to maintain and keep as confidential all information received from the other and not to use such information to compete directly or indirectly with the other but only in connection with the evaluation of a possible arrangement, subject to the following limitations. . .

(emphasis added). This language is clear that the Agreement does not prevent competition between the parties nor does it define the arrangement between the parties, it merely prevents the use of "confidential information" in competing.

Under Massachusetts law, non-competition agreements are enforceable only if they are necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest.  Lombard Med. Techs, Inc. v. Johannessen, 729 F. Supp. 2d 432, 438 (D. Mass. 2010); 7 Eleven, Inc. v. Grewal, 60 F. Supp. 3d 272, 282 (D. Mass. 2014).  Courts will not enforce non-competition agreements meant solely to protect employees from run of the mill business competition.  Lombard, 729 F. Supp. 2d at 439 (citing Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 310 N.E. 2d 915, 920 (1974)).   The Agreement does not contain any of these elements, that is, it does not state the legitimate business interest Sonic Solutions is seeking to protect; it does not seek to limit competition in a reasonable fashion in terms of time and space; and/or that the interest the Agreement seeks to protect is consonant with the public interest.   Moreover, as stated, the injunctive relief Plaintiffs seek relates to SSAC's

customers not Sonic Solutions customers and does not relate to "the evaluation of a possible arrangement between DPI and Sonic Solutions."

There is also a substantial question as to whether the names and addresses of Sonic Solutions is the type of information that is entitled to protection as confidential information under Massachusetts law.  The term "confidential information" is not defined in the Agreement so it provides no guidance on what information Sonic Solutions was seeking to protect.  The Massachusetts courts assess six factors in determining whether information is confidential:

> (1) the intent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employee and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Corporate Technologies, Inc. v. Harnett, 943 F. Supp. 2d 233, 239-40 (D. Mass. 2013) (citing Jet Spray Cooler, Inc v Crampton, 361 Mass. 835, 282 N.E.2d 921, 925 (1972)).

In this case, the record reflects that Plaintiffs made no effort to protect the names and addresses of their customers, the information that they now claim is confidential. [Trig. Dec., ¶ 11, 20, 28].  Sonic Solutions did not provide DPI with any information that Sonic Solutions claimed was confidential.  [Id, ¶ 15].  Plaintiffs have made no showing that names of its customers have value, the unavailability of this information to the general public, or why its disclosure could harm Sonic Solutions.  There is simply nothing in this

record to reflect that the names and addresses of Sonic Solutions customers was intended to be confidential and/or protected by the Agreement.   Sonic Solutions, therefore, has not met its burden of establishing that it will prevail on its claim to enforce the Agreement.

      **e.**      **<u>Injunctive Relief Pursuant to G.L.C. 266, § 91.</u>**

Section 91 of G.L.C. 266 confers standing upon any party aggrieved by any person who falsely advertises merchandise for sale to seek an injunction against the person who engages in such false advertisement.   <u>Chenlen v. Philips Electric North America</u>, 20 Mass. L. Rptr. 652, at *5 (Mass. Sup. Ct. March 1, 2006).   The allegations involving this Count relate to DPI's on-line advertisements through testimonials, specifically Exhibit 11 related to Cumberland Harbour, St. Mary's Georgia.   [Doc. 1-13].   Plaintiffs claim that the photograph was of Rockland Country Club in Rockland, New York and show examples of algae management systems sold by Sonic Solutions in 2004 and not DPI.

Mr. Trigiani's Declaration states that the error was discovered on June 7, 2021. [Doc. 26-1, ¶ 40].   DPI corrected the testimonial and removed the inaccurate images from its website by June 9, 2021.   [<u>Id</u>].   This was done prior to DPI learning of this lawsuit.   [<u>Id</u>]. This testimony by Mr. Trigiani is uncontradicted in this record.   Sonic Solutions or Plaintiffs' remedy under G.L.C. 266 § 91 is limited to equitable relief.   See <u>Thornton v. Howard Univ</u>., 2 F. Supp.2d 89 (D. Mass. 1998).   Given the advertisement or testimonial has been removed from DPI's website, their claim for injunctive relief arising from this mistake is now moot.

f.      **Defamation**.

According to Plaintiffs' Complaint, DPI published a written Hydro Bioscience Ownership, Distribution and Sales Clarification Notice (the "Notice") on April 26, 2021. [Doc. 1-11].  The Notice states in part:

> It has come to our attention that the sales, distribution and ownership of DPI's Hydro Bioscience product line may have been misrepresented in the relevant marketplace, and we are taking measures to correct these misrepresentations.  If you believe you have signed an agreement with, or led to believe that such DPI products are only available from a certain vendor, then please be advised that: **DPI does not currently, nor has it ever had an exclusivity agreement of any form, or sales or distribution agreement with any party or vendor outside of Norway, Iceland, Scotland and the Faeroe Islands**.  This Notice is for the purposes of clarification that DPI is the owner of its HBS products, DPI's sales channels, and customer support and that no other person has the right thereto or an interest therein.

[Id] (emphasis added).  Mr. Trigiani's Declaration states that it has no exclusive dealer arrangement with SSAC, ACUS or Sonic Solutions [Trig. Dec., ¶ 11, 23, 28].  Neither Plaintiff cites any such exclusivity agreement between it and DPI or any agreement that gives either Plaintiff the exclusive right to distribute DPI's HBS products.

"Under Massachusetts law, to prevail on a claim for defamation the plaintiff must establish that: (1) the defendant published an oral (slander) or written (libel) statement; (2) the statement was about, and concerned, the plaintiff; (3) the statement was defamatory; (4) the statement was false; and (5) the plaintiff suffered economic loss, or the claim is actionable without proof of economic loss."  Noonan v. Staples, Inc., 707

F.Supp. 2d 85, 89 (D. Mass. 2010) (citing Stanton v. Metro Corp., 438 F.3d 119, 124 (1st Cir. 2006)).

The Notice does not mention either Plaintiff by name. For this reason alone, Plaintiffs' defamation claim should fail when assessed on its merits. Plaintiffs must also prove the falsity of the statements contained in the Notice to sustain their claim for defamation. Even though Massachusetts recognizes that a statement need not explicitly refer to the plaintiff to constitute defamation, the plaintiff must prove (1) the defendant intended the words to refer to the plaintiff, or (2) the defendant's words reasonably could be interpreted to refer to the plaintiff and defendant was negligent in publishing them in such a way that they could be so understood. Eyal v. Helen Broad Corp., 411 Mass. 426, 430-31, 583 N.E.2d 228, 230-31 (1991). This is a high burden which plaintiffs have yet to meet based on the record before the Court. Moreover, DPI contends that the statements in the Notice are true, that is, no such exclusivity or dealer agreements exist with persons other than those identified in the Notice. See McAvoy v. Shufrin, 401 Mass. 593, 597, 518 N.E. 2d 513, 517 (1988) (truth is an affirmative defense to a claim for libel). DPI should be given the opportunity to prove the truth of the statements in the Notice and the Court has no basis to presume the statements are false for purposes of Plaintiffs' claims for a preliminary injunction.

The issuance of a preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right. Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012). The likelihood of success on the merits is normally the most heavily weighed factor. Conquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir.

15

2009).  Given that SSAC has not met its burden of proving a likelihood of success on the merits for any of its causes of action, the Plaintiffs' first and second motion for temporary injunction should be denied.


2.    **Injunctive relief is unavailable to Plaintiffs as they have an adequate remedy at law.**

The second factor for the Court to evaluate is considering Plaintiffs' motion for a preliminary injunction is whether Plaintiffs will "suffer irreparable harm in the absence of injunctive relief."  Allstate Ins. Co. v. One Beacon Am. Ins. Co., 989 F. Supp. 2d 143, 149 (D. Mass .2013).  Injunctive relief is unavailable when the moving party has an adequate remedy at law in the form of damages.  Charlesbank Equity Fund II v. Blends To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004); Bio-Imaging Tech., Inc. v. Marchant, 584 F. Supp. 2d 322, 330 (D. Mass. 2008) (A showing of irreparable harm requires "an actual, viable, present threat of serious harm" that cannot be remedied through money damages alone).

Plaintiff must prove damages in order to prevail on their claims for interference with business relations, interference with contractual relations, breach of contract and defamation.  Section 11 of M.G.L. c. 93A also permits the recovery of damages.  Plaintiffs' fillings make no showing that the remedy of damages, if it can prove its claim, is inadequate.  In fact, the Declaration of Dana G. Taylor, SSAC's President, states that his company needs only six months to develop its own manufacturing capability for the HBS products that it purchases from DPI.  [Doc. 11, p. 2].  This statement reflects SSAC's harm is both monetary and calculable.  See Allscripts Healthcare, LLC v. Dr/Decision Resources, LLC, 386 F. Supp. 3d 89, 95 (D. Mass. 2019).

Given that SSAC or Plaintiffs have not demonstrated their alleged harm is not compensable, Plaintiffs have failed to satisfy the second prerequisite for injunctive relief and for this independent reason, the Plaintiffs' motions for a preliminary injunction should be denied.

3. **The remaining factors to be considered by the Court do not weigh in favor of granting a preliminary injunction.**

The final two factors are that the balance of the hardship between the two parties favor injunctive relief and that the injunction would not harm the public interest. See Ross-Simmons, supra. With respect to the balance of hardship, it would work a substantial hardship on DPI to be compelled to sell its HBS products based on future SSAC orders without any assurance of being paid and without a definitive price list. The principal matter that Defendants submit should be considered on the final element is the fact that SSAC has no agreement with DPI, much less an agreement that prohibits disclosure of confidential information or creates any restrictions on competition. Defendants respectfully submit that it is not in the public interest for this Court to dictate with whom DPI does business when it is not bound to SSAC by a restrictive covenant. See BNY Mellon, N.A. v. Schauer, 2010 WL 3326965, at *8 (Mass. Super. May 14, 2010) (There is a strong public interest in allowing third parties, not bound by a restrictive covenant, to make unencumbered decisions regarding those entities and individuals with whom they would like to do business). Defendants, therefore, contend that these two factors when considered by the Court weigh against preliminary injunctive relief.

## CONCLUSION

For the reasons set forth herein and those contained in DPI's prior alternate response, Plaintiffs' motions for a preliminary injunction should be denied.

HUNTER, SMITH & DAVIS, LLP

By:     *s/Mark S. Dessauer*
        Mark S. Dessauer, Esq.
        TN BPR NO.: 010421
        1212 North Eastman Road
        Post Office Box 3740
        Kingsport, Tennessee 37664-0740
        dessauer@hsdlaw.com
        (423) 378-8840; Fax: (423) 378-8801
        Admitted Pro Hac Vice

        Karen Sutherland, Esq.
        Mass. Bar No. 684923
        THE SUTHERLAND LAW FIRM, LLC
        123 Main Street, Suite B
        Belfast, Maine 04915
        (207) 218-1524/ (207) 218-1624
        ksutherland@thesutherlandlawfirm.com

        *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 2, 2021, the foregoing **Response In Opposition To Renewed Motion For Temporary Restraining Order** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties have been served by hand delivery, overnight delivery, facsimile transmission, or by mailing a copy of same by United States Mail, postage prepaid.

Bulkley, Richardson and Gelinas, LLP
James C. Duda, Esq.
Lauren C. Ostberg, Esq.
jduda@bulkley.com
lostberg@bulkley.com

**HUNTER, SMITH & DAVIS, LLP**

___*s/Mark S. Dessauer*
Mark S. Dessauer