IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONICSOLUTIONS ALGAE CONTROL, LLC, <br> SONIC SOLUTIONS, LLC, and <br> ALGAECONTROL.US LLC, <br><br> Plaintiffs <br><br> VS. <br><br> DIVERSIFIED POWER INTERNATIONAL, LLC, <br> and ANTONIO TRIGIANI, <br><br> Defendants | Civil Action No. <br> 3:21-cv-30068-KAR |

# SUPPLEMENTAL DECLARATION OF ANTONIO TRIGIANI

STATE OF TENNESSEE:
COUNTY OF SULLIVAN:

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. My name is Antonio ("Tony") Trigiani. I have personal knowledge of all facts stated in this Declaration and if called to testify, I could and would testify competently thereto. I am the President and sole member of Diversified Power International, LLC ("DPI"), a Tennessee limited liability company. This will serve to supplement my previous Declaration filed in this case.

2. Paragraph 35 of my previous Declaration references an e-mail from Tara Spitzer, an employee of Sonicsolution Algae Control, LLC ("SSAC") regarding SSAC and

Algaesonix, LLC ("Algaesonix") being one and the same company. A copy of the April 16, 2021 e-mail is attached as **Exhibit 1**.

3. Purchase Order 301, referenced by the Plaintiffs in their filings with the Court was issued by Algaesonix to DPI and accepted March 7, 2021. [See Doc. 26-4]. It was not issued by SSAC or Algaecontrol.US LLC ("ACUS"). During the time up until approximately the first week of April, DPI had no information as to whether or not SSAC or Algaesonix were a combined company as claimed by Ms. Spitzer in her April 16, 2021 e-mail or separate companies or who controlled the respective companies' purchase orders, or accounts payable and invoicing or by what company's agreement of net payment and cap terms. DPI maintained SSAC as a customer separate from its dealings and affiliations with Algaesonix until the potential LOI to purchase DPI's HBS division had been consummated. Two previous shipments from line items on PO 301 were given to a carrier where the 'Ship To' address was secretive. The paperwork where the field requested a ship to address, was left blank. One of our employees took a photograph of the carrier driver's smartphone where she captured the ship-to address, and that photograph of the carrier's smartphone displayed the name of Michelle Morgan, DPI's former employee Charlie Morgan's wife. For the second shipment prepared on April 14, 2021, I instructed my employee, Paul Woods, to call Mr. Field to receive payment and shipping instructions. Paul Woods informed me that we 'DPI" were, at the instruction of Mr. Field, to address all future concerns by Ms. Spitzer, an employee of SSAC. In the same email received by Ms. Spitzer on April 16, 2021, she is now directing and assuming the execution of the 'Purchase Order' – PO. 301, which had been issued by Algaesonix. As reflected in my earlier Declaration, I made the decision on behalf of DPI to not accept

SSAC's purchase orders attached as Exhibit 7 to Plaintiffs' Complaint and to not continue to provide HBS products to Algaesonix under Purchase Order 301 to protect the business interests of DPI.

4.  As my Declaration reflects in paragraph 42, I assigned to Charles Morgan, while he was a DPI employee, a job to create a DPI dealer sales agreement. He never completed this task. On August 5, 2020, Mr. Morgan sent me a blank version of the SSAC dealer sales agreement which was not what the job demanded, nor was it ever required by the job, nor me, to copy SSAC's stationary. A copy of Mr. Morgan's August 5, 2020 e-mail and the blank version of the SSAC dealer sales agreement is attached as **Exhibit 2**. This was not an SSAC executed dealer sales agreement, it is SSAC's blank stationary. Except for Exhibit 4 attached to Plaintiffs' Complaint, DPI has not received a SSAC dealer sales agreement with any third party. DPI has no knowledge of any person or parties with whom SSAC has a dealer sales agreement or dealer sales arrangement.

5.  DPI is not a party to any contract or agreement with ACUS. DPI's business relationship with ACUS has been strictly on a purchase order by purchase order basis. Purchase orders received from ACUS reflected purchase price of the line items listed and not ACUS' sales price to their customer.

6.  DPI is not a party to any contract or agreement with SSAC. DPI's business relationship with SSAC has been strictly on a purchase order by purchase order basis. Purchase orders received from SSAC reflected purchase price of the line items listed and not SSAC's sales price to their customer.

7. I have reviewed Exhibit 4 to the Plaintiffs' Complaint, a dealer sales agreement signed by Les Traitments Bio-Bac Inc. ("Bio-Bac"). To the best of my knowledge based on our shipment history as instructed by ACUS with the first shipment occurring in 2018, and never a recorded shipment to Bio-Bac for Sonic Solutions, Bio-Bac was an ACUS customer, not a customer of Sonic Solutions, LLC ("Sonic Solutions") as claimed by Plaintiffs.

8. As reflected in paragraph 11 and 12 of my Declaration, DPI's sales to Sonic Solutions consisted of DPI's XSun Solar Panel Products, the only product sold to Sonic Solutions from 2009 through till 2017, and thereafter DPI's HBS products. DPI dropped shipped the Products to Sonic Solutions' customers at Sonic Solutions request.

9. As reflected in my previous Declaration, the "possible arrangement" as stated in the May 8, 2012 Confidentiality, Non Disclosure and Non-Compete Agreement between DPI and Sonic Solutions and attached as Exhibit 1 to Plaintiffs' Complaint was never consummated. The purpose of this agreement was to explore DPI's manufacture of products for Sonic Solutions. It had nothing to do with and was unrelated to Sonic Solutions' purchase of DPI's XSun Products which Sonic Solutions had been purchasing since 2009. The vast majority of DPI's sales of its XSun Products to Sonic Solutions or approximately 90% occurred during the period 2009 -2012 and prior to the above agreement being signed, DPI had access to the names and addresses of Sonic Solutions customers during this time period and based upon my recollection, Sonic Solutions never requested that this information was confidential nor was this information covered by the 2012 agreement. It was never an issue or a consideration prior to the 2012 agreement.

10. On page 9 of Plaintiffs' memorandum in support of temporary restraining order and motion for temporary injunction [Doc. 7], there is reference to a customer by the name of Maryland Biochemical as being a customer of Sonic Solutions. Maryland Biochemical, to the best of my knowledge based on all known shipments of XSun Solar Power Systems ever shipped at the request of Sonic Solutions since 2009, was a customer of ACUS, not Sonic Solutions. DPI does not have any records of ever shipping any products to Maryland Biochemical based on a purchase order issued by Sonic Solutions. In addition, DPI's first shipment in May 2016 of its HBS products was to Aquarion Water Company, through ACUS, not Sonic Solutions.

11. On page 9 of Plaintiffs' memorandum in support of motion for preliminary injunction [Doc. 7], Plaintiffs reference a customer in Ecuador and a Uruguayan water authority. As reflected in paragraph 41 of my Declaration, the communication referenced in Exhibit 3 to Plaintiffs' Complaint was based on a secretive and fraudulent letter, whose existence was not even known by me until it appeared as 'Exhibit-3' and prepared by Charles Morgan in concert with Lawrence Field, and/or the officers of SSAC.

12. I declare under penalty of perjury, the foregoing is true and correct.

Executed this 2nd day of August, 2021.

_____
Antonio Trigiani

**SWORN TO AND SUBSCRIBED** before me this the 2nd day of August, 2021.

_____
Notary Public

My commission expires:
July 1, 2024

[Notary Seal: Brittany N. Childress, State of Tennessee Notary Public, County of Sullivan, My Comm. Expires July 1, 2024]

6

*Tony Trigiani*

**DPI-President**

414 Century Court

Piney Flats, TN  37686

(p) 423-538-9002 x112

(f) 423-538-9202

(c) 423-366-8456

All information contained within this message may be privileged, confidential and/or subject to non-disclosure agreements and protected from disclosure and distribution. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or use of the information contained herein is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and promptly delete the message from your computer.

**From:** Tara Spitzer <tara@sonicsolutionsllc.com>
**Sent:** Friday, April 16, 2021 2:04 PM
**To:** Tony Trigiani <ttrigiani@dpipower.com>
**Subject:** Re: AlgaeSonix Purchase Order 301

Good Afternoon Tony,

Thank you for your reply.  We are still hopeful that DPI will be able to meet the shipping date as promised on the Purchase Order.  If this is not the case, which items will be on back order as of May 1st?  At this time, it is imperative that DPI focuses their efforts on completing Quattro systems and Solar systems instead of completing the remaining mezzo systems.  We have enough mezzo systems.  We are looking to receive a variety of items to fulfill our customers orders.

Now that AlgaeSonix and SonicSolutions Algae Control are one entity, any order that is submitted to DPI from this point forward, should be made a priority and then be deducted from the AlgaeSonix Purchase Order.  SSAC will be invoiced for cable only.  Once a mix of items have been received by AlgaeSonix, AlgaeSonix will then be able to fullfill the SonicSolutions Algae Control orders.

To help us meet our customers needs and to arrange trucking on the rolling pickups, please provide us expected completion dates for the remaining open items.  Again, focusing manufacturing efforts on the Quattro and Solar systems is imperative at this time.

**EXHIBIT 1**

Thank you for your time and consideration.


Tara

[redacted]

**From:** cmorgan@dpipower.com <cmorgan@dpipower.com>
**Sent:** Wednesday, August 5, 2020 11:28 AM
**To:** Tony Trigiani <TTrigiani@dpipower.com>
**Subject:** SS Dealer Agreement

Thank You,
Charlie Morgan
Account specialist



414 Century Ct.
Piney Flats, TN 37686
Office: 423-538-9002 Ext 129
cmorgan@dpipower.com

All information contained within this message may be privileged, confidential and/or subject to non-disclosure agreements and protected from

1



238 Bridge St, Unit B
Northampton, MA 01060
Toll-Free: 866-KO-ALGAE
www.SonicSolutionsllc.com

# DEALER SALES AGREEMENT

This Agreement is made and entered into this _____ day of _____ 2020 between **SonicSolutions Algae Control LLC**, a Delaware (USA) Limited Liability Company, whose principal place of business is **238 Bridge Street, Unit B, Northampton, MA** and, _____ _____ whose principal place of business is _____.

**SonicSolutions Algae Control LLC** (hereinafter called SSAC) does hereby appoint and accept _____ (hereinafter called DEALER) as a DEALER for representation, marketing and sales of all products distributed by SSAC (hereinafter called SYSTEMS) upon terms and conditions set forth below.

1. **DEALER SALES EXPECTATIONS:**
    A. Resell ten (10) Hydro BioScience® systems during the first 12 month timeframe from the date of this fully executed contract. These ten (10) SYSTEMS may be a "mix and match" of available systems *(Quattro-DB®, Mezzo-DB™, Dual kit options, and complete solar packages);*
    B. resell 25 Hydro BioScience® systems during the second 12 month period *(Quattro-DB®, Mezzo-DB™, Dual kit options, and complete solar packages);*
    C. resell 40 Hydro BioScience® systems during subsequent 12 month periods *(Quattro-DB®, Mezzo-DB™, Dual kit options, and complete solar packages);*
    D. if DEALER has a website, DEALER will establish reciprocal links with SSAC website within 30 days of signing the DEALER Agreement.
    E. should the DEALER fail to meet these minimum requirements for any 12 month period, the DEALER may receive a "Probationary Status" and/or be removed from the SSAC authorized dealer list.

2. **INVOICING**: SSAC will invoice and expect payment from the DEALER in a timely manner as outlined in paragraph 9 for all sales and/or rental fees due. The DEALER, in turn, will be responsible for invoicing and collecting from their end user.

3. **DEALER Discount:**
    A. The DEALER discount is **30%** off of the Manufacturer's Suggested Retail Price (MSRP) for complete Hydro BioScience® SYSTEMS *(Quattro-DB®, Mezzo-DB™, Dual kit options, and complete solar packages);*
    B. The DEALER discount is **20%** off of the MSRP for all <u>cables, accessories, and individual components.</u>
    C. The DEALER will receive a BONUS DISCOUNT of an additional 5% (totaling 35% off of MSRP) for any individual orders over 20 SYSTEMS.
        (i) Not applicable on cables, accessories or individual components.
        (ii) Only DEALERs in good standing (no receivables over 30 days outstanding) will receive the BONUS DISCOUNT.
    D. Add-on products or accessories are not eligible to be included in the SYSTEM count to qualify for a BONUS DISCOUNT.

4. **PRICING PROMOTIONS:** To protect the integrity of the price structure of the SYSTEMS, DEALERS should not feature any SSAC Systems priced below existing MSRP prices. This specifically refers to Internet or other advertising vehicles. Prices are subject to the PRICE GUARANTEE in paragraph 13.

5. **SHIPPING:**
   A. DEALERS are responsible for shipping, taxes (where applicable) and insurance.
   B. International DEALERS are responsible for shipping, insurance, tariffs and duty charges.

6. **CURRENCY:** The MSRP is in US currency.

7. **ADVERTISING:**
   A. DEALER shall have the right to market and sell the SYSTEMS and shall have use of the trade name "SonicSolutions Algae Control LLC®".
   B. DEALER shall submit to SSAC for prior approval all advertising, media copy, or publicity DEALER intends to use in marketing the SYSTEMS. SSAC shall approve such materials within 7 days of their receipt. SSAC further agrees to furnish additional materials and information on the SYSTEMS as may be developed from time to time. DEALER shall not be authorized to use any materials provided by SSAC without its prior approval.

8. **CUSTOMER SERVICE AND TRAINING:** Throughout the term of this Agreement, SSAC shall provide continuous support and consultation service.

   A. Mandatory training is required for all DEALER team members who will be selling the SYSTEMS. Training will be arranged within 30 days of the executed Dealer Agreement.
   B. DEALER shall follow all of SSAC recommended methods and directions with respect to test procedures, installation, usage and representations as to the functions of the SYSTEM.

9. **DELIVERY:** SSAC shall ship all orders within 15 working days upon receipt of the purchase order for the same. Shipping costs for any order are to be paid by the DEALER.

10. **PAYMENT TERMS:**

    A. Unless otherwise stated payment is due to SSAC under Net 30 terms. SSAC reserves the right to charge interest on uncollected amounts due over 30 days past due at a rate of 1.5% per month.
    B. Only DEALERS in good standing can place additional orders. If any invoices are over 60-days past due, any future orders are PREPAID only.
    C. All International orders are PREPAID only unless otherwise arranged with SSAC.

11. **WARRANTY:** SSAC shall warrant the condition of the SYSTEMS to each retail purchaser of such SYSTEMS in accordance with the provisions of the three (3) YEAR LIMITED WARRANTY as stated in the User's Manual for transducer heads and two (2) YEAR LIMITED WARRANTY on PSUs, cables and accessories. This warranty period is subject to regulations of a given country in which the DEALER is conducting business. DEALER does not adopt such warranty nor act as a co-warrantor, but will only pass on such warranties to the purchaser.

12. **NO FEES:** At no time shall DEALER ever be liable for any franchise fee, royalty fee or sum of money, however described, as a condition precedent by SSAC performance of this Agreement.

13. **RETURNS:** The DEALER will not be permitted to return unsold SYSTEMS that they have purchased from SSAC except those with manufacturer's defects. Should DEALER return any SYSTEMS to SSAC for replacement due to manufacturer's defects, SSAC will replace the defective unit with a unit of the same class size.

14. **PRICING:** The prices of the SYSTEMS, cables, accessories and components (hereinafter called PRODUCT LINE) are subject to change at any given time. SSAC may raise prices on the PRODUCT LINE to cover the inflation rate or any improvements on the PRODUCT LINE or in SSAC marketing to be used by DEALER. For each change in pricing, DEALER shall be informed thirty (30) days prior to the effective date. The DEALER may terminate this Agreement by giving sixty (60) days prior written notice to SSAC in the event the DEALER does not approve the change in the Pricing made by SSAC. The orders confirmed by SSAC and placed before the effective date of any price change are not affected by the price change.

15. **IMPROVEMENTS:** SSAC reserves the right to change, improve, or modify the SYSTEMS or any part of component thereof at any time without incurring any obligation to replace SYSTEMS previously manufactured or sold.

16. **TERMINATION:**

    A. SSAC may terminate this association with DEALER at any time by giving sixty (60) days prior written notice thereof to DEALER. SSAC may terminate this association with DEALER without sixty (60) days prior written notice for non-performance reasons as outlined in paragraph 1 (Dealer Sales Expectations).

    B. DEALER may terminate his association with SSAC at any time by giving sixty (60) days prior written notice thereof to SSAC. DEALER shall have the right to sell existing inventory at the time of termination, subject to the obligations herein contained, including, but not limited to, the obligations as to pricing payments. On or before sixty (60) days following termination of this Agreement, DEALER shall give written notice to SSAC of the list of projects on which DEALER has been actively working and on which DEALER seeks supply of SYSTEMS by SSAC. DEALER will have up to 120 days from notice of termination of this agreement to submit purchase orders to SSAC for the projects agreed upon. Upon termination, either by the DEALER or by SSAC, DEALER agrees to turn over all customer files in a timely matter so that a newly appointed DEALER or SSAC home office will have a record of all SYSTEMS installed for service and warranty purposes. SSAC may terminate its association with DEALER for non-payment on goods received.

    C. The DEALER agrees not to sell or represent any other ultrasonic algae eliminators other than ones distributed by SSAC and for a period of two (2) years following termination of this Agreement.

17. **LEGAL:**
    A. The execution of this Agreement or the exercise of any rights hereunder is not intended and shall not be construed as creating a partnership or joint venture between SSAC and DEALER or any other party. The validity, construction, and interpretation of this DEALER

Agreement and the rights and duties of the parties hereto shall be governed by the laws of the Commonwealth of Massachusetts. This DEALER Agreement constitutes the entire understanding between SSAC and the DEALER and contains the final, complete and exclusive statement of representation, promise, or inducement of any kind unless set forth herein. DEALER agrees to follow all local, state or national codes and laws regarding the marketing and installation of the SYSTEMS in such given territory.

B. In the event that SSAC should have to retain an attorney to assist it in collecting a delinquent account, the DEALER shall become liable for all SSAC attorney's reasonable collection fees and costs.

C. If SSAC should decide to enter a civil action to obtain a judgment for any money owed by DEALER, the case can be entered in a court located in Hampshire County, Massachusetts, and SSAC can obtain service of process on DEALER by sending DEALER a copy of the legal process pursuant to the Massachusetts long arm statue, and DEALER will not contest the court's jurisdiction. By signing this document DEALER hereby waives the DEALER's right to a jury trial in any such action.

D. If any provision contained in this entire document is declared to be unenforceable, the court shall only amend this agreement to the limited extent necessary to remove the illegal provision. And the remainder of this agreement as so amended shall remain in full force and effect.

This Agreement is binding upon the parties whose signatures appear below.

_____
Dana Taylor, President     Date:
**SonicSolutions Algae Control LLC**

_____
*Signature of* DEALER     Date

_____
(*Type or Print Name*)  DEALER

_____
*Company Name to be listed as dealer*

_____
*Title of signee*