IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONICSOLUTIONS ALGAE CONTROL, LLC, <br> SONIC SOLUTIONS, LLC, and <br> ALGAECONTROL.US LLC, <br><br> Plaintiffs/Counter-Defendants <br><br> VS. <br><br> DIVERSIFIED POWER INTERNATIONAL, LLC, <br> and ANTONIO TRIGIANI, <br><br> Defendants/Counter-Plaintiff | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br><br> Civil Action No. <br> 3:21-cv-30068-KAR |

# RESPONSE IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendants/Counter-Defendant, Diversified Power International, LLC ("DPI") and Antonio Trigiani ("Trigiani") (DPI and Trigiani sometimes collectively hereinafter the "Defendants") and Hydro Bioscience, LLC ("Hydro Bioscience")[1], submit the following response in opposition to Plaintiffs' renewed motion to compel production of documents [Doc. 118].

In support of this response, Defendants submit and file herewith:

---

[1]  No document production request has been submitted to Hydro Bioscience.  It was added as a party defendant by Order filed March 25, 2022.  [Doc. 96].  The deadline set by the Court for submitting written discovery requests was set by the Court was November 8, 2021. [Doc 76].  Plaintiffs have not sought leave of court to submit additional discovery requests and no written discovery requests have been submitted to Hydro Bioscience.

1.  Declaration of Antonio Trigiani (herein "Trigiani, ¶ __"), and

2.  Declaration of Mark S. Dessauer (herein "Dessauer, ¶ __").

## INTRODUCTION

Plaintiffs seek to compel Defendants to produce documents of sales of DPI's HBS products for an undefined period after August 24, 2021. For the reason set forth herein, Defendants and Hydro Bioscience contend that such documents are not relevant to any claims or defenses in this action. As a result, Defendants and Hydro Bioscience contend that Plaintiffs' motion should be denied.

## ARGUMENT

**1. Documents concerning sales of HBS products by DPI after August 24, 2021 are not relevant to Plaintiffs' claims or the defenses asserted by Defendants and Hydro Bioscience in this case.**

A party may serve a request within the scope of Fed. R. Civ. P. 26(b)(1) to produce, or allow the requesting to inspect documents in the responding party's "possession, custody or control." Fed. R. Civ. P. 34(a)(1)(A). Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(1) requires the court to engage in a balancing test, weighing the moving party's need for this information, the availability of other means of obtaining it, and the burden placed on the respondent.  In re Western Maine Accounting Services, LLC, 2022 WL 2604597, at *2 (D. Maine July 17, 2022), citing EEOC v. Texas Roadhouse, Inc., 303 F.R.D. 1, 2 (D. Mass. 2014); See also Gillenwater v. Home Depot, Inc., 2021 WL 6206995, at *1 (D. Mass. Nov. 23, 2021) (listing factors considered in weighing proportionality under Rule 26(b)(1)).  Although Rule 26 is broadly construed, it does not provide for boundless discovery.  Fernandez v. Bouley, 2022 WL 2915702, at *2 (D. Mass. July 25, 2022).  The Court is to limit discovery if it is outside the scope permitted by Rule 26(b)(1).

Plaintiffs rely primarily on Primarque Products Co., Inc. v. Williams West & Witts Products, 988 F.3d 26 (1st Cir. 2021) in contending that DPI's sales data for its HBS products after August 24, 2021 is relevant to Plaintiffs' damage claims.  Primarque involved similar claims as asserted by Plaintiffs in this case, that is, breach of an implied contact and tortious interference with business relations.  However, in Primarque, the jury was instructed that it could not award damages for lost profits on the breach of contract claim that were incurred beyond the reasonable notice period, not to exceed ninety days following the termination.  988 F.3d at 42.  In this case, DPI terminated its relationship with SSAC and Plaintiffs on April 26, 2021.  Based on Primarque, Plaintiffs, assuming there was an implied contract was in place with DPI that was breached by DPI, can only recover damages for a reasonable period after the termination but not exceeding ninety days.  Id.  Defendants in this case produced documents relative to DPI's HBS products'

sales for a period of 120 days, more than the time period in which the plaintiff in Primarque could recover lost profit damages.

Notwithstanding the above legal principles, the facts in Primarque are distinguishable from the facts of this case. In Primarque, the plaintiff was a distributor of soup based products for the defendant, William West & Witts Products Company ("WWW"), the manufacturer of the products. 988 F.3d at 30-31. There was no written distributorship agreement in place at the time WWW terminated its business relationship with the plaintiff. Id., at 29. The parties were operating in a market that was filled with competitors that were making similar products. In fact, the plaintiff did sell other suppliers' soup based products to certain of its retail customers. Id., at 30. Here, Plaintiffs only sold DPI's HBS products. This means that Plaintiffs' customers only went to them not because of their relationship with Plaintiffs, but due to their desire to purchase DPI's HBS products. Thus, the notion asserted by Plaintiffs that they would retain their entire customer base for an entire year after DPI terminated the parties' relationship is speculative if not outright dubious.

In addition, Plaintiffs assertion that information regarding DPI's sales "even a full year after the termination" of the parties' relationship can inform the finder of fact based on Primarque does not apply in this case. Again, in Primarque, the reasoning behind the one year period was that the plaintiff's customers went and found other suppliers from whom to purchase the soup based product. The Primarque court reasoned that it was reasonable for plaintiff to receive reasonable notice of WWW terminating its supply arrangement in order for the customers of the plaintiff and the plaintiff to find a different

supplier of the soup base and if reasonable notice was provided, the plaintiff would not have lost its customers. In this case, the Plaintiffs or SSAC's customers were purchasing a specialized patented product sold by DPI. Even if DPI had acted in a manner contended by Plaintiffs, they would have otherwise lost their customers at the end of a reasonable termination period which would have been well before the one year period to which Plaintiffs claim in their brief is proper.

Defendants and Hydro Bioscience contend that M.G.L.A. 106 § 2-309 is applicable here to determine Plaintiffs' measure of damages or the time period that is relevant for the recovery of their alleged damages. The statute provides in relevant part that "[t]ermination of a contract by one party except on the happening of an agreed event requires that reasonable notification received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable." M.G.L.A. 106 § 2-309(3).[2] The comment to this section notes that "good faith and sound commercial practice" call for such notice in order to give the other party reasonable time to seek a substitute arrangement. Id., Official Comment 8. In this case as in Primarque, there was no distributorship or dealer agreement in place and DPI sold its HBS products to SSAC or Plaintiffs on a purchase order by purchase order basis. Trigiani, ¶s 7 and 8. In Primarque, the court determined that the reasonable notice period for termination was at most, ninety days and limited the plaintiff's recovery on its breach of contract claim to ninety days. 988 F.3d at 42.

---

[2] Defendants and Hydro Bioscience contend that the Massachusetts UCC is applicable here as a general matter given that DPI and SSAC's or Plaintiffs' relationship was one "relating to the present or future sale of goods", that is, DPI's HBS products. See Primarque, 988 F.3d at 34 N.3.

Other cases that have addressed this issue have found reasonable notice to range from 10 days to four weeks.  See Rockwell Engineering Co., Inc., 559 F.2d 460, 463 (7th Cir. 1977) (reasonable notice for an oral representation agreement for the sale of electrical measuring and control devices was 28 days); Sinkoff Beverage Co., v. Jos. Schlitz Brewing Co., 273 N.Y.S. 364, 367 (Sup. Ct. Suffolk County, New York) (ten day notice period for termination of a beer distributorship agreement that did not provide the beverage company with exclusivity was found to be reasonable); Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 293-94 (Mass. 1980) (ninety day termination without cause provision in franchise agreement was reasonable); and World Class Wholesale, LLC v. Star Industries, Inc., 2020 WL 1069466, at *8 (Sup. Ct. Del. 2020) (reasonable notices of supplier terminating its license to sell alcohol to distributor was not required).

Assuming for purposes of argument, an implied in fact contract was in place between DPI and SSAC or Plaintiffs, then Defendants and Hydro Bioscience contends that the issue of relevance of sales data is controlled by M.G.L.A. 106 § 2-309(3).  This statute provides that the termination must be reasonable.  In Massachusetts, for a breach of an implied in fact contract, damages are based on the loss of profits the plaintiff suffered as a result of the alleged breach during the reasonable notice period.  Primarque, 988 F.3d at 42.  Although it may be an issue of fact as to what was reasonable notice under the facts of this case, Primarque holds that the period does not exceed ninety days. In a tortious interference claim, the measure of damages is "the loss of advantages. . . which, but for such interference, the plaintiff would be able to enjoy." National Merchandising Corp. v. Leyden, 370 Mass. 425 (Mass. 1976) (quoting H.D. Watts Co. v. American Bond and Mortgage Co., 157 N.E.2d 634, 639 (Mass. 1927)).  Under both theories, Defendants

and Hydro Bioscience contend that they have produced all relevant sales data.  Unlike in Primarque, customers of SSAC and Plaintiffs were not buying soup base, but were buying a specialized algae remediation product that was not otherwise available.  The harm that Plaintiffs allegedly suffered, whether loss of profits or a windfall to Defendants, would be covered by the reasonable time needed for termination under § 2-309(3).  In Primarque, the jury was instructed that a reasonable time period for termination was not to exceed ninety days. 988 F.3d at 42.  Defendants have produced sales records and related sales information for a period of 120 days after the date of termination.  Defendants and Hydro Bioscience submit that any similar information outside of the 120 day period is outside the scope of discovery permitted by Rule 26(b).  Therefore, Plaintiffs' motion to compel should be denied.

**2.     The issue raised by the motion to compel and the response, even if the motion is granted in some respect by the Court, is not an appropriate case for the award of sanctions, as Defendants and Hydro Bioscience's legal position is substantially justified under the facts of this case.**

Federal Rule Civil Procedure 37(a)(5) provides that if a motion compelling discovery is granted

> . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

7

    (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

    (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5).  In this case, Defendants have produced over 25,000 pages of responsive documents.  Defendants' position that sales data more than 120 days after the parties' contractual relationship was terminated is not relevant to any claim or defense in this case is substantially justified based on the First Circuit's holdings in Primarque.  This discovery dispute between the parties is genuine.  Therefore, if the Plaintiffs' motion is granted or granted in part, the Court should decline to award expenses including attorney's fees to Plaintiffs.

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs' motion to compel should be denied.

HUNTER, SMITH & DAVIS, LLP

By: */s/Mark S. Dessauer*
Mark S. Dessauer, Esq.
TN BPR NO.: 010421
1212 North Eastman Road
Post Office Box 3740
Kingsport, Tennessee 37664-0740
dessauer@hsdlaw.com
(423) 378-8840; Fax: (423) 378-8801
Admitted Pro Hac Vice

Karen Sutherland, Esq.
Mass. Bar No. 684923
THE SUTHERLAND LAW FIRM, LLC
123 Main Street, Suite B
Belfast, Maine 04915
(207) 218-1524/ (207) 218-1624
ksutherland@thesutherlandlawfirm.com

*Attorneys for Defendants/Counter-Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 20, 2022 the foregoing **Response in Opposition To Plaintiffs' Renewed Motion To Compel Production of Documents** filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties have been served by hand delivery, overnight delivery, facsimile transmission, or by mailing a copy of same by United States Mail, postage prepaid.

Bulkley, Richardson and Gelinas, LLP
James C. Duda, Esq.
Lauren C. Ostberg, Esq.
jduda@bulkley.com
lostberg@bulkley.com

HUNTER, SMITH & DAVIS, LLP

   */s/Mark S. Dessauer*
Mark S. Dessauer